UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

CIVIL ACTION NO. 5:09-CV-00116

| | |
|---|---|
| WILLIAM NORKUNAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION AND |
| ) | ORDER |
| TAR HEEL CAPITAL WENDY'S LLC, ) | |
| A Domestic Limited Liability ) | |
| Corporation, and FFC LIMITED ) | |
| PARTNERSHIP, A Domestic Partnership ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on cross-motions for summary judgment and the related memoranda of law and exhibits offered in support and opposition. (Docs. 20, 28). For the reasons set forth below, this Court will dismiss the majority of the claims as moot, grant summary judgment in favor of Defendants, and deny summary judgment to Plaintiff William Norkunas for the remaining active controversy.

**STATEMENT OF THE CASE**

**A. Factual Background and Procedural Posture**

On October 28, 2009, Plaintiff William Norkunas ("Norkunas") filed a complaint pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*. ("ADA"), alleging

1

that five (5) "Wendy's" restaurants owned and operated by Defendants Tar Heel Capital Limited, LLC ("Tar Heel") and FFC Limited Partnership ("FFC"), were places of public accommodation that failed to comply with numerous ADA accessibility requirements. Norkunas is mobility impaired and ambulates in a motorized scooter or with the assistance of other devices. (Compl. ¶ 1). He alleges that, in visiting the restaurants on multiple occasions, the properties were not ADA accessible. He further alleges that the properties' non-compliance created conditions detrimental to his safety and to his ability to enjoy the goods and services offered to the public at these establishments. Norkunas' complaint asserts, *inter alia,* that the five properties exhibited ADA violations in three general categories: parking and loading zone, accessible public restrooms, and access to goods and services. (Compl. ¶ 14).

The ADA provides private plaintiffs with the capacity to sue for injunctive and equitable relief to remedy violations. 42 U.S.C. § 12188(a). In accordance with this enforcement mechanism, Norkunas petitioned this Court to compel Defendants to bring the properties into compliance with ADA accessibility standards. Because Norkunas seeks enforcement of a federal statute, this court derives proper subject-matter jurisdiction from the Congressional grant of authority in 28 U.S.C. § 1331.

During the course of discovery, both Plaintiff and Defendants retained experts to inspect the properties and prepare compliance reports. Norkunas retained Pablo Baez, a professional ADA compliance inspector based in Simpsonville, S.C. (Baez Aff. 33). On June 10, 2010, pursuant to Fed. R. Civ P. 34(a)(2),[1] Mr. Baez visited and inspected the five properties. He

---

[1] Fed. R. Civ. P. 34(a)(2) permits entry onto "designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."

prepared and submitted a report of his findings on July 1, 2010, which included descriptions and photographs of alleged violations as well as recommendations for bringing the properties into compliance (Baez Aff. Doc. 23-2). As part of the discovery process, this report was provided to Defendants. Following Mr. Baez's inspection, Defendants took steps to remediate the alleged violations, including altering parking lot and sidewalk structures, refitting restrooms, and adding signage (Doc. 21 3). Defendants subsequently retained David S. Liles, an architect licensed by the North Carolina Board of Architecture and by professional organizations in several other jurisdictions (Liles Aff. ¶2). On October 11, 2010, Mr. Liles visited the properties to inspect the alleged violations contained in Mr. Baez's report. He prepared a report of his findings on October 15, 2010, which concluded that the alleged violations documented by Mr. Baez, "no longer exist." (Liles Aff. ¶5). Mr. Liles' report contains photographs and measurements that can be directly compared with those in Mr. Baez's report. On December 20, 2010 and December 31, 2010, Defendants and Norkunas filed the instant cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**B. Motions Summary**

In their Motion for Summary Judgment (Doc. 20), Defendants' primary contention is that Norkunas' ADA claims have been mooted and should be dismissed by the Court for want of Constitutional subject matter jurisdiction—a moot claim is no longer a case or controversy as required by Article III, section 2, of the United States Constitution. Defendants assert that they have instituted changes to the properties that bring their restaurants into full compliance with the accessibility standards required by the ADA. Consequently, Defendants ask the Court to dismiss

the claims against it or, alternatively, to find that the properties are compliant as a matter of law and grant summary judgment in its favor.

Norkunas' opposition to Defendants' Motion for Summary Judgment (Doc. 24) rests upon the same arguments articulated in his own Motion for Summary Judgment (Doc. 22). He asserts that the alterations made to the properties do not bring them into full compliance with the ADA. As such, he argues that the claims are not moot. However, in the totality of the documents submitted to the Court, including two memoranda, a sworn affidavit, and his Motion for Summary Judgment, Norkunas only contests the current compliance of one of the initially alleged violations—a curb ramp at the 1301 South Collegiate Drive, Wilkesboro, North Carolina property ("Wilkesboro Property"). On this point, Norkunas argues that the ADA standards require the curb-ramp to include a top landing of at least thirty-six inches. Photographs and reports submitted to this Court by both parties clearly show that this curb ramp does not include a top-landing. (Liles Aff. Doc 21-2 19; Baez Aff. Doc. 23-2 12).

Aside from the Wilkesboro Property curb ramp, Norkunas does not address the present or past conditions of any of the other properties. The implication of this omission is that the current compliance of these properties is uncontested. This implication is fairly supported by Norkunas' briefs: "Defendant's [sic], while claiming that they have made the property compliant failed to fully and adequately fix *all* the violations." (Doc. 23 2) (emphasis added). "In the instant case, Defendant [sic] has failed to adequately remedy the violations at the [Wilkesboro Property]. The violations that exist is [sic] in regards to the recently reconstructed curb ramp." (Doc. 23 13). Therefore, the facts presently before the Court indicate that four of the five properties are currently ADA compliant.

In resolving the motions *sub judice,* this Court must determine whether the current compliance of four of the five properties renders the pertinent ADA claims nonjusticiable as moot; whether the Wilkesboro Property curb ramp complies with the ADA, permitting summary judgment for either movant; and whether either party is entitled to attorney's fees and costs.

## ANALYSIS

**A. Moot Claims**

Defendants raise a threshold question of mootness. As part of the Federal Judiciary, this Court is an entity of limited subject-matter jurisdiction with, "no jurisdiction to decide moot cases because of the case or controversy requirement of Article III of the Constitution." *Virgina ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980). The Supreme Court has held that the case or controversy requirement is not satisfied, "when the question sought to be adjudicated has been mooted by subsequent developments . . . ." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Thus, when a case is rendered moot, it falls outside the subject-matter jurisdiction of the federal courts and must be dismissed.[1]

Federal courts have dismissed ADA claims as moot when the alleged violations have been remedied after the initial filing of a suit seeking injunctive relief. In *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358 (S.D. Fla. 2004), the court found that ADA claims were mooted when alterations were made to the defendant's hotel which brought the property into compliance. Similarly, in *Parr v. L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Haw. 2000), the court determined that ADA claims were rendered moot when the defendant widened ADA-accessible

---

[1] Recognizing the fundamental importance of subject matter jurisdiction, the Federal Rules of Civil Procedure provide that, "if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

parking spaces the week before trial. In *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456 (D. Md. 2000), the court determined that ADA claims were moot when the defendant-corporation chose to permanently close the facility containing the alleged violations, rendering injunctive relief unnecessary.

In the instant case, Norkunas petitioned this Court to issue a declaratory judgment determining that the properties were in violation of the ADA and to order Defendants to make alterations to the properties. (Compl. 6-7). It is uncontested that during the pendency of this case Defendants made various alterations to the properties designed to bring them into compliance with the ADA. As stated above, the parties' submissions to the Court indicate that—following the alterations—at least four of the five properties are currently ADA Compliant. Mr. Liles' report states that all five of the properties are fully compliant (Liles Aff. ¶ 5), whereas Norkunas only disputes the compliance of the Wilkesboro Property (Doc. 23 13). Thus, as an initial matter, the question of ADA compliance for four of the five properties has been mooted by subsequent developments, depriving the Court of its ability to take remedial action because, "there is nothing for the court to remedy, even if it were inclined to do so." *Spencer v. Kemma*, 523 U.S. 1, 18 (1998).

However, the initial appearance of mootness in this case does not end the inquiry because, "it is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit . . . ." *United States v. Jones*, 136 F. 3d 342, 348 (4th Cir. 1998) (citing *Iron Arrow Soc'y v. Heckler*, 464 U.S. 67, 71-72 (1983)). "Defendants face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old ways after the threat of a lawsuit had passed." *Lyons P'Ship, L.P. v. Morris*

*Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) (quoting *United States v. W.T. Grant. Co.*, 345 U.S. 629, 632 (1953)). An exception to the general rule exists when there is "no reasonable expectation that the wrong will be repeated." *Id*. The Supreme Court has established a two-factor test to determine whether a defendant has met this burden. First, the defendant must show, "that there is no reasonable expectation that the alleged violation will recur. " *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) Second, the defendant must show that, "interim relief or events have completely and irrevocably eradicated the effects of the alleged violations[s]." *Id*. These factors constitute the *Davis* test.

Defendants made interior changes to plumbing and restroom fixtures, and external alterations to asphalt parking lots, concrete sidewalks, and concrete curb ramps at the five properties. (Doc. 21 7). Structural changes to a commercial building and its grounds are generally considered permanent. Here, as many of the alterations are literally set in stone, the Court is persuaded that there is no reasonable expectation that the alleged violation will recur—satisfying the first element of the *Davis* test. In further support of this element, the Court notes that Defendants incurred not-insignificant costs in their efforts to remedy the alleged violations. Mr. Baez, plaintiff's expert, estimated that the cost of remedying the alleged violations would exceed $25,000. (Baez Aff. 6-16) (providing cost estimates for correcting each individual violation). The court has been presented with photographic evidence showing parking lot, sidewalk, signage, and restroom fixture alterations. (Liles Aff. 16-22). The permanent nature of these alterations also serves to satisfy the second element of the *Davis* test—requiring complete and irrevocable eradication of the alleged violations' effects.

The uncontested evidence shows that any alleged violations at four of the five properties have been remedied, and the Court finds that there is no reasonable expectation that they will recur and that their effects have been irrevocably eradicated. Thus, claims regarding these four properties are no longer in dispute and are moot.[2] Accordingly, this Court need only address summary judgment for the remaining live claim—the Wilkesboro Property—as set forth below.

**B. Standard of Review for Summary Judgment**

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is appropriate "if the pleadings . . . and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In evaluating summary judgment, a court is required to view the facts and to draw reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *see also Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) ("[the non-moving party is entitled] to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.") (internal quotations omitted). Against this presumption, the party seeking summary judgment bears the burdens of persuasion and production to show that the nonmoving party's case is not supported by evidence. *Celotex Corp.*, 477 U.S. at 331. In short, summary judgment requires a court to determine the law

---

[2] (1) 316 N. 2nd Street, North Wilkesboro, North Carolina; (2) 159 Turnersburg Highway, Statesville, North Carolina; (3) 1807 E. Broad Street, Statesville, North Carolina; and (4) 1016 Blowing Rock Road, Boone, North Carolina.

governing the dispute and to further determine whether any of the facts offered by the parties could affect the disposition of the dispute when applied to that law.

**C. Governing Standards for ADA Compliance**

The sole live claim in this case concerns the compliance of a curb ramp at the Wilkesboro Property. The parties do not contest the curb ramp's measurements. Rather, the dispute concerns which standards control the determination of ADA compliance and whether the ramp, as currently constructed, satisfies those standards. Norkunas asserts that the 1994 Americans with Disabilities Act Accessibility Guidelines ("1994 Guidelines"), published by the United States Department of Justice, provide the controlling standards. Defendants submit that the 2009 North Carolina Building Codes, which incorporate by reference accessibility standards from the International Code Council and American National Standards Institute, are the applicable standards. Defendants additionally assert that the 1994 Guidelines, and the 2010 revision thereof, constitute current standards for measuring ADA compliance.

On September 15, 2010, the Department of Justice published a revised version of the Americans with Disabilities Act Accessibility Guidelines ("2010 Guidelines"). The 2010 Guidelines will become the controlling regulations, overtaking the 1994 Guidelines, on March 15, 2012. In the period between the 2010 Standards' release and their effective date, new construction and structural alterations may apply either the 1994 or 2010 Guidelines. *See* U.S. Department of Justice, *2010 ADA Standards for Accessible Design* (2010).[3] Mr. Liles performed his compliance inspections after Tar Heel completed alterations to the properties on October 11, 2010. At that

---

[3] This publication aggregates ADA Title III regulations from 28 C.F.R part 36, subpart D, appendix A, and 36 C.F.R. pat 1191 apps. B, D) available at http://www.ada.gov/regs2010/2010ADAStandards

time, the 2010 Guidelines were concurrently applicable with the 1994 Guidelines. Therefore, in this case, either set of ADA Guidelines can be used to evaluate compliance as a matter of law.[4] As described below, the Wilkesboro Property curb ramp is compliant under both.

A curb ramp is a "short ramp cutting through a curb or built up to it." 28. C.F.R. Pt. 36. App. A (1994). A curb ramp allows a mobility impaired person to ascend to the sidewalk elevation with less physical strain or with the assistance of a wheeled-device. At the Wilkesboro Property, the curb ramp connects the parking lot and the sidewalk which patrons use for ingress and egress to the restaurant. The running slope of the ramp–that which rises in the direction of travel–is perpendicular to the building and runs from the parking lot edge of the sidewalk to the exterior wall of the building. Because this curb ramp is constructed in the middle of the sidewalk, it was built with side flares–graduated surfaces extending from the sides of the running slope such that the entire curb ramp forms a shallow and wide trough. This method of construction prevents pedestrians walking along the sidewalk from tripping into the sides of a steep ramp.

**1. Curb Ramp Compliance under the 1994 Guidelines**

Under the 1994 Guidelines, Norkunas argues that the curb ramp is non-compliant because it lacks a top-landing of at least thirty-six inches. He asserts that, "[t]he curb ramps must provide a level landing to make a turn," and that, "they can't slope up to the building wall." (Doc. 23 13). Section 4.3.3 of the 1994 Guidelines requires that buildings have an ADA accessible route that is at least thirty-six inches wide and which, pursuant to section 4.3.7, does not cross any slope greater than 1:50 (2%). 28. C.F.R. Pt. 36. App. A (1994). Norkunas categorizes the side flares of

---

[4] Because the 2009 North Carolina Building Codes contain materially identical provisions regarding curb ramps as those contained in the 2010 Guidelines, the Court need not independently analyze those standards. *Compare* Section 406.4, *2010 ADA Standards for Accessible Design* (2010) *with* Section 406.7 *ICC/ANSI A117.1* (incorporated by reference into the North Carolina Building Code Section 1101.2).

the Wilkesboro Property curb ramp as part of this accessible route. Because the side flares have a slope of 6% (Liles Aff. 12), Norkunas asserts that the accessible route crosses a slope greater than 1:50 (2%) in violation of the 1994 Guidelines' requirements.

However, the 1994 Guidelines specifically contemplate the role a curb ramp may play in an accessible route. Section 4.7.5, which incorporates by reference the terms of figure 12(a), provides that where a curb ramp is situated such that pedestrians must walk across it, and such that it has a top-landing of less than forty-eight inches, the maximum permissible slope for side flares is 1:12 (8.4%). 28. C.F.R. Pt. 36. App. A (1994). At the Wilkesboro Property, the curb ramp is in the middle of the sidewalk—pedestrians would normally be required to cross it to enter and exit the building. Also, the top-landing is less than forty-eight inches—the ramp extends fully to the exterior wall of the building, leaving no top-landing. Figure 12(a) clearly illustrates that, provided the slope is less than 1:12 (8.4%), an accessible route which crosses the side flares of a curb ramp is satisfactory. In the figure 12(a) illustration, a man in a wheelchair is pictured moving along an accessible route which includes the slope of a curb ramp.

The 1994 Guidelines do not state that a curb ramp must have a minimum top-landing width of thirty-six inches. The 1994 Guidelines only provide that where a top-landing is less than forty-eight inches, the slope of the side flares cannot exceed 1:12 (8.4%). Accordingly, the 6% slope of the Wilkesboro Property side flares renders the curb ramp compliant with the 1994 Guidelines.

## 2. Curb Ramp Compliance under the 2010 Guidelines

The 2010 Guidelines specifically clarify accessible route requirements in the context of curb ramps. In so doing, the 2010 Guidelines create a thirty-six inch top-landing requirement, but establish a clear exception for situations like the one presented at the Wilkesboro Property. In pertinent part, the 2010 Standards Provide:

> "**406.4: Landings**. Landings shall be provided at the tops of curb ramps. The landing clear length shall be 36 inches (915mm) minimum. The leading clear width shall be at least as wide as the curb ramp, excluding flared sides, leading to the landing.
>
> **EXCEPTION**: In *alterations*, where there is no landing at the top of curb ramps, curb ramp flares shall be provided and shall not be steeper than 1:12."

U.S. Department of Justice, *2010 ADA Standards for Accessible Design* (2010) (emphasis in original). The curb ramp at the Wilkesboro Property is an alteration. Furthermore the slope of the side flares is 6%, less than the maximum permissible 1:12 (8.4%). Thus, the curb ramp is also ADA compliant pursuant to the 2010 Guidelines.[1]

Because the measurements, reports and affidavits provided by both parties establish that the curb ramp at the Wilkesboro Property is compliant with both the 1994 and 2010 Guidelines, "the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo Inc.*, 203 F.3d 274, 279 (4th Cir. 2000). Therefore, Defendants are entitled to judgment as a matter of law and will be granted summary judgment.

---

[4] Because the 2009 North Carolina Building Codes contain materially identical curb ramp specifications to the 2010 Guidelines, the Wilkesboro Property curb ramp is also compliant under the NCBC.

**D. Attorney's Fees and Costs**

Norkunas' prayer for relief includes a petition for an award of attorney's fees, costs and litigation expenses. (Compl. 6-8). In *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001), the Supreme Court extensively discussed the standards for awarding attorney's fees and costs. While noting that the standard "American Rule" requires parties to bear their own attorney's fees, the Court directly addressed the circumstances under which an ADA plaintiff is entitled to such an award. In certain statutes, often called "fee-shifting" statutes, Congress authorizes an award of fees to a prevailing party. This authorization shifts the financial burden of a lawsuit to the violating party—reducing potential disincentives for 'private attorneys general' to file suits. *Buckhannon*, 532 U.S. at 632 (Ginsburg, J. dissenting). The ADA is a fee-shifting statute. *See* 42 U.S.C. § 12205.

The *Buckhannon* Court held that a prevailing party is one, "in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . ." *Buckhanon,* 532 U.S. at 604 (quoting *Black's Law Dictionary* 1145 (7th ed. 1999)). "A prevailing party is one who has been awarded some relief by the court . . . ." *Id*. In reviewing its precedents, the Court noted that it, "never…awarded attorney's fees for nonjudicial alteration of actual circumstances." *Id.* at 606. Defendants altered the actual circumstances of their properties absent any action by this Court. Here, because Norkunas' claims will either be dismissed as moot or resolved in favor of Defendants, no judgment will be rendered in his favor. Norkunas is not a prevailing party.

It is evident that Defendants' remediation of the properties was affected in direct response to this lawsuit. Mr. Baez's report provided the framework by which Defendants instituted alterations to the properties and commissioned Mr. Liles' subsequent compliance report.

Nevertheless, the "catalyst theory," in which a plaintiff could receive attorney's fees and costs pursuant to a fee-shifting statute when a legal action spurred a voluntary change in the defendant's conduct, has been explicitly disallowed by the Supreme Court: "We hold that the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the . . . [Americans With Disabilities Act]." *Buckhannon*, 532 U.S. at 610. Accordingly, this Court will not award attorney's fees or costs to Norkunas.

In their Answer, Defendants generally demand fees and costs (Doc. 11 5), but do not plead any special circumstances that give this Court cause to depart from the "American Rule." *Buckhannon,* 532 U.S. at 632.

## CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED THAT**, pursuant to Fed. R. Civ. P. 12(h)(3), all claims pertaining to the following properties are **DISMISSED** as moot: (1) 316 N. 2nd Street, North Wilkesboro, North Carolina; (2) 159 Turnersburg Highway, Statesville, North Carolina; (3) 1807 E. Broad Street, Statesville, North Carolina; and (4) 1016 Blowing Rock Road, Boone, North Carolina. With regard to the remaining active controversy—the property at 1301 South Collegiate Drive, Wilkesboro, North Carolina—Plaintiff William Norkunas' Motion for Summary Judgment (Doc. 22) is **DENIED**, and Defendants' Motion for Summary Judgment (Doc. 20) is **GRANTED**. All requests for Attorney's fees and costs are **DENIED**. Plaintiff's Motion to Strike (Doc. 12) is **DENIED** moot.

Signed: July 19, 2011

Richard L. Voorhees
United States District Judge